UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Killimayer,

                     Petitioner,

        - *against* -

D. Rock, *Superintendent,*

                     Respondent.

**12 Civ. 6328 (NSR)(LMS)**

**REPORT AND
RECOMMENDATION**

TO: THE HONORABLE NELSON ROMÁN, U.S.D.J.[1]

    Petitioner Joseph Killimayer, proceeding pro se, has filed the instant habeas petition pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2005 state-court conviction for robbery. Pet. 2. After a jury convicted him of one count of robbery in the first degree and one count of robbery in the second degree, on August 4, 2005, Petitioner was sentenced as a persistent violent felony offender under N.Y. Penal L. § 70.08 to indeterminate terms of imprisonment of twenty years to life on each count. Resp't's Ex. 1. The sentences were ordered to run concurrently. Id.

    Petitioner asserts the following grounds for habeas relief: (1) ineffective assistance of trial counsel; (2) unduly suggestive pretrial identification procedures; and (3) ineffective assistance of appellate counsel. Pet. ¶ 12. For the following reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed.

---

[1]This matter was referred to me for the preparation of a Report and Recommendation by the Honorable Edgardo Ramos, to whom the case was then assigned. Order of Reference, Docket Entry (herein, "D.E.") 9.

# I.    BACKGROUND

## A.    The Crime and the Investigation

On May 15, 2004, at approximately 8:00 P.M., Savas Erdogan stepped outside of the Mobil gas station in Fishkill, New York, where he worked as a clerk, to take a smoking break. Trial Transcript (June 27, 28, 29, 2005)(herein, "T") 110-11.  While smoking outside the gas station, he saw a vehicle he recognized, a beat-up white pick-up truck, pull in, with two men inside. T: 111-12.  Approximately ten minutes later, after Erdogan returned to his post at the cash register inside the store, the two men entered the store. T: 113, 119.  Erdogan recognized the shorter of the two men, the driver of the truck, because he had seen him "a couple times" about a week earlier. T: 113.  The driver approached the counter, grabbed Erdogan by his shirt, pointed a kitchen knife at his throat, and said, "Give me the money, motherfucker." T: 113-14. In an apparent attempt to drag him across the counter, both men pulled on Erdogan's shirt with such force that they tore it off his body. T: 114, 115, 119.  The driver then came around the counter to the register, still pointing the knife at Erdogan, and again told him, "Give me the money." T: 116.  Erdogan testified at trial that he thought the driver was going to kill him, so he opened the register and the two men grabbed the cash inside. T: 191.  After the men drove away in the truck, Erdogan pushed the store's alarm button and called the police. T: 192.  Erdogan later identified the driver of the truck, the shorter man, as Petitioner.

A few minutes after Erdogan contacted the police, Fishkill Detective Nicholas DeAntonio responded to the scene. T: 27.  Erdogan described the two men and their distinctive getaway car to DeAntonio. T: 28-29.  From Erdogan's observations and the gas station's surveillance video, DeAntonio compiled a description of the car as a rusty, beat-up, white pick-up truck which was missing a front fender, the front grill, and a headlight, and which appeared to

2

be hand-painted.  T: 30.  DeAntonio broadcast the description of the car to all local police departments.  Id.  On May 18, 2004, a Fishkill patrolman saw a truck matching the description parked in the lot of a local development, the Avalon Apartments, approximately a mile from the gas station.  T: 33-34.  Using information provided by the DMV, DeAntonio then determined that the truck was registered to Petitioner.  T:34-35.

After running Petitioner's name through a criminal record database, DeAntonio discovered that Petitioner had prior criminal convictions, and contacted the Department of Parole for his photograph.  Hearing Transcript (June 7, 2005)(herein, "H") 28.  Using this photograph and the surveillance camera footage, DeAntonio determined that Petitioner was a white man of about thirty years of age, with a round face, light mustache, and short brown hair.  H: 34.  He then found five "filler" booking photos of men with similar physical characteristics, and grouped them with the Department of Parole's photo of Petitioner.  H: 8.  (A photocopy of the photo array is appended to Petitioner's appellate brief, which Respondent submitted as Exhibit 38; Petitioner's photo is number two in the array.  Resp't's 38; H: 9.)

That evening, DeAntonio took the photo array to Erdogan.  H: 14.  Before DeAntonio showed Erdogan the photos, he instructed Erdogan that the array might or might not contain a photo of the perpetrator; that hairstyles, beards, and mustaches could be easily changed; and that Erdogan was to disregard any differences in the photo quality or any markings or numbers that might appear in the photographs.  H: 18-19.  Although Erdogan stated that he understood the instructions, in an abundance of caution, DeAntonio read them to him again, as Erdogan was a non-native English speaker.  H: 24, 36.  When DeAntonio then showed Erdogan the array, Erdogan immediately identified Petitioner's photo as that of the man who had robbed him several days earlier.  H: 20.

3

On May 19 or 20, 2004, Fishkill Town Justice Francois Cross issued a warrant for Petitioner's arrest based upon "accusatory instruments" filed in town court, charging him with robbery in the first degree, among other crimes.  Resp't's Ex. 2.[2]  On May 24, Fishkill police received a phone call from an anonymous person who told them that the driver of Petitioner's truck went into a particular apartment in the Avalon complex.  T: 186.  Police learned that Norman Boudreau and his wife, Wendy, lived at that apartment, T: 174; Norman was later identified as the taller robber, and Wendy testified at trial that Petitioner had been living with them for several months at the time of his arrest.  T: 135, 139.  When the police went to the apartment to execute the arrest warrant, they found Petitioner hiding under one of the beds.  T: 178.  He was arrested on May 24, 2004.  T: 179.

**B.**   **Procedural History**

**1.**      **The Wade Hearing**

In his pretrial omnibus motion, Petitioner moved for the suppression of pretrial identification evidence, or, in the alternative, a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), to determine whether such evidence should be suppressed because the identification procedures used were unduly suggestive.  Resp't's Ex. 28 at 9-10.  Westchester County Court Judge Gerald Hayes granted Petitioner's request for a Wade hearing, which was conducted on June 7, 2005.  Resp't's Ex. 31 at 3; H: 1.  Detective DeAntonio testified at the

---

[2]Some confusion exists over what date the warrant was issued.  The copy of the arrest warrant provided by Respondent does not appear to be dated with greater specificity than to say it was issued in May 2004.  Resp't's Ex. 2.  Both DeAntonio and Fishkill Detective Sergeant Richard Robinson testified at trial that the warrant was issued on May 19, 2004.  T: 56, 186.  However, the trial court referred to the date on which the warrant was issued as May 20, 2004.  Resp't's Ex. 49 at 7.  Respondent's counsel also affirms that the warrant was issued on that date.  Resp't's Aff. ¶ 4.

hearing as to the procedures described above. H: 2-38. After DeAntonio's testimony, Petitioner's counsel argued for the suppression of Erdogan's identification testimony because the photo array presented to him was unduly suggestive, as Petitioner's photo was of poorer quality than most of the other photos in the array. H: 39. He also argued that the identification procedures were invalid because Erdogan, a Turkish immigrant, had not fully understood DeAntonio's instructions. H: 40.

By Decision and Order dated June 16, 2005, Judge Hayes denied Petitioner's suppression motion. Resp't's Ex. 35. The Court reasoned that even though Petitioner's photo was of poorer quality than the others in the array, that fact alone would not have led a viewer to conclude that Petitioner's photo was the one police intended him or her to select. Id. at 3. As Petitioner's photo was otherwise similar to the others shown to Erdogan, DeAntonio's instructions to Erdogan were appropriate, and Erdogan's identification was immediate, the Court determined that the procedures used to obtain Erdogan's identification of Petitioner were not unduly suggestive. Id. at 3-4.

### 2.    The Trial

On June 21, 23, 27, 28, and 29, 2005, a jury trial was held in Petitioner's case. Erdogan, who testified through a Turkish interpreter, described the robbery and identified Petitioner in court as the shorter of the two robbers. T: 105-20, 190-225. The surveillance video of the robbery was admitted into evidence and played for the jurors. T: 196. Detective DeAntonio and another Fishkill police officer, Detective Sergeant Richard Robinson, also testified, as did Wendy Boudreau. The defense called no witnesses. On June 29, 2005, the jury convicted Petitioner of one count of robbery in the first degree and one count of robbery in the second degree. T: 297. On August 4, 2005, Petitioner was sentenced as a persistent violent felony

offender to an indeterminate term of twenty years to life imprisonment on each count, to run concurrently. Sentencing Hearing Transcript (Aug. 4, 2005)(herein, "S") 6-7. He was also ordered to pay restitution of $370, an obligation he shared with Norman Boudreau, who already had been sentenced. S: 4, 7-8.

### 3.    Post-Trial Proceedings

Petitioner directly appealed his conviction, proceeding through counsel. Initially, his appellate counsel raised three arguments: (1) the photo array was unduly suggestive because Petitioner's photo was "fuzzy" and because the photos contained height markings indicating Petitioner's height, and the trial court erred by not conducting a hearing to determine whether Erdogan had a source independent of the tainted photo array for identifying Petitioner; (2) the identification of Petitioner as the shorter perpetrator was against the weight of the evidence and was supported by legally insufficient evidence; and (3) trial counsel provided ineffective assistance in failing to move for the dismissal of the indictment for the People's alleged violation of the state speedy trial statute, N.Y. Crim. Proc. L. § 30.30. Resp't's Ex. 38. However, after submitting Petitioner's brief, appellate counsel requested by letter to the court that the Appellate Division strike the third argument, as "this issue is more appropriate for a CPL 440 motion if it is briefed at all." Resp't's Ex. 41. Counsel stated that after filing Petitioner's brief, she received a letter from Petitioner's trial counsel detailing the plea negotiations which, if credited, would explain the delay she had argued violated Petitioner's statutory speedy trial rights. Id. Thus, the Appellate Division considered only the first two claims.

By Decision and Order dated May 29, 2007, the Appellate Division denied these claims as unpreserved and, "[i]n any event," without merit. People v. Killimayer, 40 A.D.3d 1118 (2d Dep't 2007). The Court of Appeals denied Petitioner's application for leave to appeal the

Appellate Division's decision on July 25, 2007. People v. Killimayer, 9 N.Y.3d 866 (2007).

On January 21, 2008, Petitioner filed a pro se motion to vacate the judgment against him pursuant to N.Y. Crim. Proc. L. § 440.10. Resp't's Ex. 46. Therein, he raised the argument his appellate counsel had withdrawn: namely, that his trial counsel had been ineffective for failing to move to dismiss the indictment because Petitioner's statutory speedy trial rights had been violated. Id. On November 12, 2008, Judge Hayes denied Petitioner's motion. Resp't's Ex. 49. On January 28, 2009, the Appellate Division denied Petitioner's motion for leave to appeal that decision. Resp't's Ex. 52.

Petitioner then filed the instant habeas petition in this Court, which is dated August 13, 2012. Pet. 7.

## II.    DISCUSSION

### A.    Standard of Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "'[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190 - 91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28

7

U.S.C. § 2254(b), (c):

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(i) there is an absence of available State corrective process; or
>>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'"  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the due process clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the

8

following: "(a) reli[ed] on pertinent federal cases employing constitutional analysis, (b) reli[ed] on state cases employing constitutional analysis in like fact situations, (c) assert[ed] . . . the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) alleg[ed] . . . a pattern of facts that is well within the mainstream of constitutional litigation." See Daye, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282 (citing Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979)). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 283.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show

9

that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### B.     Timeliness

Petitioner filed his habeas petition long after a year from the date on which his conviction became final, which is typically the filing deadline for habeas petitions under AEDPA. 28 U.S.C. § 2244(d)(1). Tolling the limitations period for the pendency of Petitioner's § 440.10 motion does not render the Petition timely. 28 U.S.C. § 2244(d)(2). In order for the petition to be timely filed, then, Petitioner must establish that he is entitled to equitable tolling, or that the limitations period began to run on a later date than that specified by 28 U.S.C. § 2244(d)(1)(A).

To explain his delay, Petitioner asserts that he was unaware of AEDPA's existence until shortly before he filed his petition, as the prison law libraries at the facilities in which he was previously incarcerated only made a copy of AEDPA available upon request, and the state-trained prison law clerks on whom Petitioner relied failed to apprise him of AEDPA's existence or its filing deadline. Pet'r's Aff., D.E. 7, at 6 n. 6. Petitioner contends that the inadequate legal assistance provided by these prison law clerks was a state-created impediment to his timely filing. Id. at 7. It was not until July 5, 2012, a month after Petitioner was moved to a different correctional facility, that he learned from his new cellmate of AEDPA and its limitations period. Id. Thus, Petitioner argues that the inadequacy of the law libraries and research assistance at Auburn Correctional Facility and Elmira Correctional Facility were state-created impediments to

10

his timely filing.[3]

Petitioner does not specify whether this alleged state-created impediment entitles him to equitable tolling or to a statutory adjustment of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(B).  Courts in this Circuit have analyzed the impact of state-created impediments to timely filing as grounds for either statutory or equitable relief, or both.  See Rush v. Lempke, No. 09–CV–3464 (JFB), 2011 WL 477807, at *4-10 (E.D.N.Y. Feb. 2, 2011)(temporary lack of access to legal materials due to incarceration at a different facility did not justify equitable tolling or statutory tolling under § 2244(d)(1)(B)); Bush v. Lantz, No. 3:06–CV–410 (RNC), 2009 WL 522940, at *1-3 (D. Conn. Mar. 2, 2009)(lack of access to legal materials and restricted prison law library access while petitioner was incarcerated at another facility insufficient for equitable or statutory relief).[4]  For the reasons that follow, I conclude that the Petition is untimely, as Petitioner has not established his entitlement to either equitable or statutory relief.

### 1.    Equitable Tolling

A habeas petitioner is entitled to equitable tolling of the AEDPA statute of limitations "only if he [or she] shows (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his [or her] way and prevented timely filing." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010)(internal quotations and citation omitted).  "The

---

[3]Petitioner also argues that he is entitled to tolling of the limitations period because his appellate attorney provided ineffective assistance by not informing him of the existence of AEDPA. D.E. 7 at 7.  However, his appellate counsel was under no obligation to give him legal advice on collateral attacks outside the scope of her representation, which evidently ended with the completion of his direct appeal.  Thus, this argument for tolling is unavailing.

[4]In the spirit of Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), copies of all unpublished decisions cited herein have been provided to Petitioner by the Court.

11

term 'extraordinary' does not refer to the uniqueness of the petitioner's circumstances, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Bolarinwa v. Williams, 593 F.3d 226, 231-32 (2d Cir. 2010)(internal quotation omitted). The extraordinary circumstance must "effectively prohibit[]" the petitioner from timely filing. Raynor v. Dufrain, 28 F.Supp.2d 896, 900 (S.D.N.Y. 1998).

It is "extremely rare" for courts in this Circuit to conclude that a state-created impediment exists which justifies equitable tolling. See Madison v. Hulihan, No. 09–CV–337 (DLI), 2012 WL 1004780, at *4 (E.D.N.Y. Mar. 23, 2012). To find that a state-created impediment prevented Petitioner from timely filing, the state must have undertaken some affirmative step which prevents the petitioner from complying with the deadline. See Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000)("The intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law.").

Petitioner is not entitled to equitable tolling because he has failed to demonstrate that a state-created impediment prevented him from timely filing. As Petitioner has not shown that the allegedly poor legal assistance he received from a fellow inmate, albeit one who had received state training, represented an affirmative act by the state, he has not established the existence of a state-created impediment. Moreover, the inadequacy of a fellow inmate's legal advice, or his failure to assist in Petitioner's legal research to Petitioner's satisfaction, is not sufficiently "extraordinary" as to merit equitable tolling. See Corrigan v. Barbery, 371 F.Supp.2d 325, 330 (W.D.N.Y. 2005)("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances.");

Martinez v. Kuhlmann, No. 99 Civ. 1094(MBM), 2000 WL 622626, at * 3 (S.D.N.Y. May 15,

2000)(inadequate prison legal assistance not sufficiently "extraordinary" to justify tolling).

 Thus, because Petitioner has failed to demonstrate that an extraordinary circumstance

prevented his timely filing, I conclude, and respectfully recommend that Your Honor should

conclude, that he is not entitled to equitable tolling.

   **2.**  **28 U.S.C. § 2244(d)(1)(B)**

 The one-year AEDPA deadline for filing a habeas petition commences at the latest of

several dates, one of which is "the date on which the impediment to filing an application created

by State action in violation of the Constitution or laws of the United States is removed, if the

applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B).[5]

Petitioner has failed to establish that an unconstitutional state-created impediment existed which

prevented him from timely filing. The state is required to protect a prisoner's constitutional

right of meaningful access to the courts, a mandate which may be accomplished with "adequate

[prison] law libraries or adequate assistance from persons trained in the law." Bounds v. Smith,

430 U.S. 817, 828 (1977). However, Petitioner's allegation that a prison law clerk's failure to

advise him of AEDPA's existence does not, without more, constitute a violation of the state's

obligations, because he has failed to show that this omission prevented him from filing a federal

habeas petition. See Lewis v. Casey, 518 U.S. 343, 356 (1996)(Bounds only requires prisons to

provide prisoners with the tools needed to file "contemplated challenges"). For instance,

Petitioner does not assert that the prison law libraries at his facilities lacked a copy of AEDPA,

---

 [5]Although a natural reading of the statute suggests that a state-created impediment resets
the AEDPA limitation period, an unpublished opinion by this Circuit describes § 2244(d)(1)(B)
as tolling, not resetting, the statute of limitations. Crawford v. Costello, 27 Fed.Appx. 57, 59 (2d
Cir. 2001).

only that he was required to specifically request it.  Cf. Egerton v. Cockrell, 334 F.3d 433 (5th Cir. 2003)(prison law library without copy of AEDPA was state-created impediment entitling petitioner to tolling under § 2244(d)(1)(B)).  Likewise, Petitioner does not assert that he asked the prison law assistants whether any federal remedies were available to him, or that the library prohibited him from conducting the kind of general research which would have led him to discover AEDPA on his own.  He has thus failed to demonstrate that the prisons provided constitutionally inadequate law libraries or legal assistance, or that any such deficiencies prevented him from timely filing.

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed as untimely, as Petitioner is not entitled to either equitable or statutory tolling under 28 U.S.C. § 2244(d)(1)(B).  In the alternative, I conclude, and respectfully recommend that Your Honor should conclude, that even if the Petition were timely filed, it should still be dismissed as meritless, as I explain more fully below.

## C.    Petitioner's Claims

### 1.    Ineffective Assistance of Trial Counsel

First, Petitioner claims his trial counsel provided ineffective assistance for failing to move to dismiss the indictment after the People allegedly violated the deadline for their trial readiness set forth in N.Y. Crim. Proc. L. § 30.30.[6]  Pet. 4.  Petitioner previously raised this claim by way of a § 440.10 motion.  Resp't's Ex. 46.  The trial court rejected his argument on the

------

[6]In pertinent part, § 30.30 provides that the People must be trial-ready within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony;" if they are not, the defendant's motion for dismissal of the indictment "must be granted."  N.Y. Crim. Proc. L. § 30.30(1)(a).  However, the statute excludes certain delays from the calculation of the deadline, such as continuances to which the defendant consents.  N.Y. Crim. Proc. L. § 30.30(4).

merits, concluding that as the People had not violated the time limits of § 30.30, defense counsel was not ineffective for failing to move to dismiss on that ground, as such a motion would have had little chance of success.  Resp't's Ex. 49 at 11.  The Appellate Division rejected Petitioner's application for leave to appeal this decision.  Resp't's Ex. 52.  Thus, as Petitioner exhausted this claim, and the state courts adjudicated it on the merits, AEDPA's deferential standard of review applies: this Court may not grant relief on this claim unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by Supreme Court precedent.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 685 (1984).  In order to prevail on a claim that this right was violated, and that he or she received ineffective legal assistance, a defendant must show that (1) counsel's performance was deficient, in that counsel's conduct was objectively unreasonable "under prevailing professional norms," and (2) this deficiency prejudiced the defendant.  Id. at 687-88.  In analyzing the first prong of this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (internal quotations omitted).  To determine whether counsel's performance prejudiced the defendant, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

"If a speedy trial motion likely would not have succeeded, defense counsel's failure to make the motion does not constitute ineffective assistance because no prejudice inures to the

petitioner in such a case." <u>Walker v. Bennett</u>, 262 F.Supp.2d 25, 36 (W.D.N.Y. 2003).  Based on
the record available to this Court, it does not appear that any such motion in this case would have
been successful.  Petitioner's speedy trial period commenced with the filing of the felony
complaint against him on May 19 or 20, 2004.  The time between Petitioner's May 24, 2004,
arraignment, at which he requested to be represented by a public defender, and May 26, 2004,
when the Dutchess County Public Defender's Office confirmed that they would represent
Petitioner, is excluded from the calculation under § 30.30(4)(f).[7]  Resp't's Ex.'s 3, 4.  By letter
dated May 26, 2004, Senior Assistant Public Defender James Hill informed the Town Court that
Petitioner waived his statutory right to a preliminary hearing, and requested that the Court
"adjourn the matter to the next regular calendar date."  Resp't's Ex. 5.  Adjournments to which
the defendant consents are excluded from the trial readiness calculation pursuant to §
30.30(4)(b).  However, by letter dated June 8, Hill informed the Court that the Public Defender
could not continue to represent Petitioner due to a conflict, and so Petitioner was appointed an
attorney from the state pro bono panel, Michael W. Brady.  Resp't's Ex. 7.

It appears that plea negotiations were ongoing during this time.  Resp't's Ex. 8.
Respondent affirms that the filing of the information by which Petitioner would be charged if he
agreed to plead guilty was repeatedly adjourned on consent of the parties to permit negotiations
to continue, until Petitioner rejected the plea offer on July 16, 2004.  Resp't's Aff. ¶ 9.
Adjournments to permit the parties to continue plea negotiations, to which the defendant or
defense counsel agrees, are excluded from calculation of the speedy trial period.  See <u>People v.</u>

---

[7]"In computing the time within which the people must be ready for trial . . . , the
following periods must be excluded: . . . the period during which the defendant is without
counsel through no fault of the court; except when the defendant is proceeding as his own
attorney with the permission of the court. . . " N.Y. Crim. Proc. L. § 30.30(4)(f).

Rodriguez, 212 A.D.2d 368, 369 (1st Dep't 1995); People v. Crogan, 237 A.D.2d 745 (3d Dep't 1997).

Thus, the record supports Judge Hayes's conclusion that the period from May 24, 2004, to July 16, 2004, is excluded from the calculation. The § 30.30 time then ran from July 16 to September 14, 2004, when the People announced their trial readiness after Petitioner was arraigned on Indictment # 88/2004 for one count of armed robbery in the first degree and one count of robbery in the second degree. Resp't's Ex.'s 10, 12. This announcement stopped the clock.

However, by Decision and Order dated November 30, 2004, the Court dismissed the indictment on the ground that "there was an omission in the charge [to the Grand Jury] which this Court finds to be prejudicial to the defendant." Resp't's Ex. 19 at 2. After the indictment was dismissed, the record indicates that plea negotiations were ongoing: at the December 23, 2004, conference, during which the filing of a superior court information was discussed, the Court asked defense counsel if Petitioner would enter a plea (of guilty) to new charges, once filed, and defense counsel stated, "As far as I know, yes." Resp't's Ex. 21 at 4: 2-4. At that conference, defense counsel consented to the adjournment of the matter to January 12, 2005. Id. at 3-4.

On January 12, however, defense counsel informed the People and the Court that Petitioner was not going to plead guilty. See Resp't's Ex. 22 at 6. The People's trial-readiness clock thus re-started on January 12, 2005. At his arraignment on the second indictment on February 23, 2005, the People stated their readiness for trial. Resp't's Ex. 27 at 2. Judge Hayes thus determined that the periods from July 16 - September 14, 2004, and January 12 - February 23, 2005, were the only periods which counted against the People–well under the six months the

17

People are permitted under § 30.30.[8]  Resp't's Ex. 49 at 11.

In his § 440.10 motion, Petitioner argued that he never consented to any adjournments and had informed his trial counsel that he was "not interested in any plea agreements," so no time should be excluded from the speedy trial calculation for adjournments on consent of the defense or for ongoing plea negotiations.  Resp't's Ex. 46 at 4.  In particular, he argues that, as he had previously rejected a plea offer in July, the Assistant District Attorney and Petitioner's trial counsel were not acting in good faith in resuming plea negotiations in December, so the time during which those negotiations took place should be held against the People.  Resp't's Ex. 48 at 13.

Despite Petitioner's arguments to the contrary, a motion to dismiss pursuant to § 30.30 would likely have been unsuccessful, and his trial counsel was not ineffective for declining to make such a motion.  Whether Petitioner consented to each adjournments his counsel requested or agreed to does not affect whether those adjournments should be held against the People.  See N.Y. Crim. Proc. L. § 30.30(4)(b)(excluding delays which come "at the request of, or with the consent of, the defendant or his counsel")(emphasis added); see People v. Garcia, 33 A.D.3d 1050, 1052 (3d Dep't 2006)(the People are entitled to rely on defense counsel's apparent authority to agree to waivers of trial-readiness time); People v. Crogan, 237 A.D.2d 745 (3d Dep't 1997).  Nor was trial counsel ineffective for allegedly failing to obtain Petitioner's consent

---

[8]Although Judge Hayes did not specifically address whether the four or five days between the issuance of the arrest warrant and Petitioner's arraignment should be included in the calculation, it appears that he excluded that time, perhaps pursuant to N.Y. Crim. Proc. L. § 30.30(4)(c)(i), which tolls the speedy trial period while the defendant is absent, either because "his [or her] location is unknown and he [or she] is attempting to avoid apprehension or prosecution, or [because] his [or her] location cannot be determined by due diligence." Regardless, this period would not change my conclusion that Judge Hayes correctly determined the People did not violate § 30.30.

to these short adjournments; "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." See New York v. Hill, 528 U.S. 110, 115 (2000).  Moreover, the People were entitled to rely on his trial counsel's apparent authority to engage in continued plea negotiations in December; such delay should not be held against them.

Thus, Petitioner has failed to challenge Judge Hayes's conclusion that no § 30.30 violation, and thus no ineffective assistance of counsel, occurred.  As the state court's determination of this claim was not contrary to or an unreasonable application of clearly established federal law, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's ineffective assistance of counsel claim should be denied.

### 2.    Suggestive Pretrial Identification Procedures

Secondly, Petitioner claims that his conviction was obtained through the use of a suggestive photo array.  Pet. 5.  On appeal, he argued, through counsel, that the array was unduly suggestive because all the photos contained height markings; according to Petitioner's counsel, the photos showed that the other men in the array were 5'10", but he was 5'5", which would have indicated to the victim that he was the shorter suspect the victim had described to police.  Resp't's Ex. 38 at 27-28.[9]  On appeal, Petitioner also argued that his photo was also "larger and blurrier" than the others in the array, although he does not repeat that argument here.  Id.  These factors, Petitioner argued, should have led the trial court to conduct a hearing to determine

_____

[9]A photocopy of the photo array is included toward the (unpaginated) end of Petitioner's appellate brief, Resp't's Ex. 38.  Petitioner's photo is Number 2 in the array.  H:9.  The Court can detect no numerical height markings on the lines behind any of the men depicted in the array, let alone markings indicating that Petitioner is 5'5" and the other men are taller; neither could Respondent in his brief on direct appeal.  Resp't's Ex. 39 at 28.  In Petitioner's reply brief, Petitioner's appellate counsel indicated that she had simply extrapolated the heights from the relative positions of the lines behind the men's heads, and that the lines made this comparison possible–not that the heights themselves were listed in the photos.  Resp't's Ex. 40.

whether the victim's in-court identification of Petitioner had a basis independent of the allegedly tainted photo array.  Id. at 28-29.

The Appellate Division held that the claim that Petitioner presses here, that the height markers rendered the photo array unduly suggestive, was "unpreserved for appellate review," and, "[i]n any event," lacked merit because "there was nothing in his photograph to indicate that he was shorter than the other participants in the array."  People v. Killimayer, 40 A.D.3d 1118 (2d Dep't 2007).  As described above, Petitioner's trial counsel argued at the Wade hearing that the pretrial identification procedure was unduly suggestive because Erdogan had not fully understood DeAntonio's instructions, and because the quality of Petitioner's photo was poorer than that of the others.  The contention that height markings rendered the procedure unduly suggestive was raised for the first time on direct appeal.

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  When a state court's rejection of a federal claim rests on an adequate and independent state law ground, a federal habeas court may only reach the merits of that claim if the petitioner "can demonstrate cause for the [state procedural] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Id. at 750.  If the petitioner cannot make this showing and the state court "expressly relied" upon an independent and adequate state law ground, a federal habeas court may not review the claim, even if the state court also reached the merits in the alternative.  See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

In evaluating whether a state law ground is "independent," federal habeas courts are to

presume that it is not "when the [state court's] decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." Coleman, 501 U.S. at 735 (internal quotation omitted). For instance, where a state court rejects a claim as "either unpreserved for appellate review or without merit," its reliance on the state procedural ground is not sufficiently clear, and a federal habeas court is not barred from considering the merits of the claim. See DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir. 2005).

For a state law ground to be "adequate," it must be "firmly established and regularly followed" in state court. See Lee v. Kemna, 534 U.S. 362, 376 (2002). Even where the state law ground is "firmly established and regularly followed," in an "exceptional case" it may nonetheless be inadequate to support the judgment if its application in a particular case is "exorbitant." Id. In order to determine whether application of an otherwise-adequate procedural default is "exorbitant," courts are to be guided by three non-exclusive factors:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

See Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003)(internal quotations omitted).

Here, the state law ground on which the Appellate Division relied is New York's rule that issues raised on direct appeal must have been preserved in the trial court, either by way of a contemporaneous objection at the relevant trial or proceeding or by the trial court's ruling on the issue. See N.Y. Crim. Proc. L. § 470.05(2); see also Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (describing New York preservation rules). Although the Appellate Division also

21

rejected this claim on the merits, it did so "in any event," and also expressly relied on the state preservation rule in rejecting Petitioner's claim. If the state preservation rule is an adequate state law ground for the Appellate Division's determination of this claim, then, this Court is barred from reaching the merits of Petitioner's claim unless he can show cause and prejudice or a miscarriage of justice. See Green, 414 F.3d at 294.

In order to preserve an issue for appeal in New York state court, a party must allege a specific error; a general objection is insufficient. See Garvey, 485 F.3d at 714-15 (discussing pertinent New York case law). Thus, "when a court rules against suppressing evidence on one ground that ruling does not preserve for appeal all other potential grounds for suppressing that evidence." Id. at 717. In New York state courts, this preservation requirement is "firmly established and regularly followed." Id. at 716. Thus, unless application of this rule in Petitioner's case is "exorbitant," the state preservation rule is adequate to support the Appellate Division's rejection of Petitioner's claim. Following the analysis used by this Circuit in Garvey, a factually and procedurally similar case to Petitioner's, I conclude that the Appellate Division's application of the state preservation rule to Petitioner's case was not exorbitant. Id. at 718-20. Thus, I conclude that the preservation rule is an independent and adequate state law ground for the Appellate Division's rejection of Petitioner's claim.

This court is foreclosed from reviewing the merits of Petitioner's claim unless he can establish cause for the default and prejudice from the alleged federal law violation, or that a miscarriage of justice will result if this Court does not reach the merits. See Coleman, 501 U.S. at 750. Petitioner has failed to meet this burden: he has not alleged any cause for the default, or that a miscarriage of justice will occur without federal review of this claim. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that the adequate and

independent state ground doctrine bars this Court from reviewing this claim, and that it should be denied.

### 3.      Ineffective Assistance of Appellate Counsel

Third, Petitioner claims his appellate attorney provided ineffective legal assistance for withdrawing the ineffective assistance of trial counsel argument described in Point 1, supra.  Pet. 5.  As Petitioner failed to raise this claim in state court by way of a petition for a writ of error coram nobis, it is unexhausted.  Since "[t]here is no time limit for filing a writ of error coram nobis" in New York, Petitioner could still assert this claim in state court.  Smith v. Duncan, 411 F.3d 340, 347 n.6 (2d Cir. 2005).  Thus, this Petition contains both unexhausted and exhausted claims, and is characterized as a so-called "mixed petition."

A court confronted with a mixed petition has several options.  First, the court may dismiss the entire petition for failure to comply with AEDPA's exhaustion requirement.  28 U.S.C. § 2254(b)(1)(A).  Second, the court may deny even the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2).  Third, the court retains discretion to stay the petition and permit the petitioner to exhaust the unexhausted claims in state court, but only where the petitioner has shown good cause for failure to previously exhaust and that the unexhausted claims are not plainly meritless.  Rhines v. Weber, 544 U.S. 269, 278 (2005).  Fourth, where the court determines that neither a stay nor a dismissal of the petition for failure to exhaust is appropriate, the court may permit the petitioner to amend the petition to delete the unexhausted claims.  See Johnson v. Kirkpatrick, No. 11 Civ. 1089(CM)(AJP), 2011 WL 3328643, at *12-14 (S.D.N.Y. August 3, 2011).  Alternatively, where the limitations period has run, the Court may deem the petition to have been amended to delete the unexhausted claims, under the assumption that the petitioner would prefer the court to consider the exhausted claims on the merits instead of

23

dismissing the petition for failure to exhaust and foreclosing any return to federal court. Id.

Here, I conclude that dismissal of the entire Petition for failure to exhaust this claim would be inappropriate. As previously noted, the AEDPA limitations period has long since run, so dismissal of the entire petition for failure to exhaust this claim would prevent Petitioner from ever returning to federal court. Staying the Petition to permit Petitioner to exhaust this claim is likewise inappropriate, since Petitioner has provided no reason for his failure to raise this claim in state court prior to doing so here. Although 28 U.S.C. § 2254(b)(2) gives the Court discretion to deny even unexhausted claims on the merits, in the interests of judicial efficiency, I conclude, and respectfully recommend that Your Honor should conclude, that the Court should simply deem Petitioner to have amended the Petition to delete this claim.[10]

## III.  CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the instant Petition be dismissed.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Nelson Román at the United States Courthouse, 300 Quarropas Street, White Plains, New York,

---

[10]In the event that Petitioner makes substantive objections to my recommendation that this claim be deemed deleted, I respectfully request that Your Honor remand the Petition to me for further review of this claim.

10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

Dated: September 6, 2013
        White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Nelson Román, U.S.D.J.

Joseph Killimayer
05-A-4292
Elmira Corr. Facility
P.O. Box 500
Elmira, NY 14802

Bridget R. Rahilly
Dutchess County District Attorney's Office
236 Main Street
Poughkeepsie, NY 12601